## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

GERALINE FELTON and REGINA ADAMS,
as the CO-GUARDIANS of LARRY
HARVEY, JR.,

      Plaintiffs,

vs.                                Case No.: 3:01-cv-00934-TJC-HTS

JOHN RICHARD AMMAN, individually and
in his official capacity; CHARLOTTE
BALLARD, individually and in her official
capacity; VICKI MARIE MULLINS LOVETT,
individually and in her official capacity;
KAREN A. OTIS, LPN, individually and in her
official capacity; ST. JOHNS COUNTY
SHERIFF'S DEPT; SHERIFF NEIL J. PERRY
individually and as Sheriff of St. Johns County;
CHRISTOPHER E. BARNES, individually and
in his official capacity; KEITH T. BARBER
individually and in his official capacity;
CAROL RISDEN, LPN individually and in her
official capacity; ANN E. DOHNER
WARDEN, RN, individually and in her official
capacity; DR. STANLEY A. COHEN,
individually and in his official capacity; DR.
MICHAEL TESSLER, individually and in his
official capacity; and ST. JOHNS COUNTY
MENTAL HEALTH DEPT.,

      Defendants.

*DISPOSITIVE MOTION*

_____/

## MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW
### BY DEFENDANT JOHN ROBERT AMMAN

Defendant JOHN ROBERT AMMAN,[1] by and through his undersigned counsel, and pursuant to the provisions of Federal Rule of Civil Procedure 56, hereby moves the Court for an Order granting him summary judgment on all claims against him and states the following grounds:

1.    Defendant John Robert Amman is entitled to summary judgment on Count I (federal claim) of the Plaintiffs' First Amended Complaint because there is no evidence to establish that Amman was deliberately indifferent to Larry Harvey Jr.'s serious medical needs, and no genuine issues of material fact exist regarding this issue.

2.    Defendant Amman is entitled to summary judgment on Count III (state law claim) of the Plaintiffs' First Amended Complaint because there is no evidence to establish that Amman acted in bad faith or malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

WHEREFORE, Defendant JOHN ROBERT AMMAN requests that the Court enter an Order granting summary judgment in his favor on all claims against him.

---

[1] Defendant was incorrectly named by Plaintiffs as John "Richard" Amman in the First Amended Complaint.

# MEMORANDUM OF LAW

## I.    BACKGROUND

Larry Harvey, Jr., was incarcerated at the St. Johns County Detention Center from September 28, 1998, to December 26, 1998.  (Doc. 32, ¶¶ 22, 53.)  Harvey had been previously diagnosed with paranoid schizophrenia and had a history of substance abuse.  (Cohen Dep. at 28, Exs. 2, 6, 7.)  On September 29, 1998, Harvey was prescribed Haldol (Haloperidol), an antipsychotic medication, and Cogentin, a medication used to counteract the side effects of the Haldol.  (Cohen Dep. at 28, Ex. 2; Amman Dep., Exs. 19, 23.)

Defendant John Robert Amman, who was a Licensed Practical Nurse at the Detention Center in 1998, participated in providing medical care to Mr. Harvey during his incarceration.  The following is a chronology of Amman's participation between September 28, 1998, and December 26, 1998:

1.    On September 29 at 9:00 p.m., Amman gave Harvey 5 milligrams of Haldol Elixir and 2 milligrams of Cogentin.  (Amman Dep., Ex. 23.)

2.    On September 30 at 9:00 p.m., Amman gave Harvey 2 milligrams of Cogentin.  (Amman Dep., Ex. 23.)

3.    On October 3 at 9:00 p.m., Amman gave Harvey 5 milligrams of Haldol Elixir and 2 milligrams of Cogentin.  (Amman Dep. at 355, Ex. 24.)

3

4.    On October 4 at 5:00 a.m., Amman gave Harvey 5 milligrams of Haldol Elixir and 5 milligrams of Cogentin.  At 9:00 p.m., he gave Harvey 5 milligrams of Haldol Elixir and 2 milligrams of Cogentin.  (Amman Dep. at 355-56, Ex. 24.)

5.    On October 5 at 5:00 a.m., Amman gave Harvey 5 milligrams of Haldol Elixir and 5 milligrams of Cogentin.  (Amman Dep. at 355-56, Ex. 24.)  At 9:00 p.m., he gave Harvey 2 milligrams of Cogentin.  (Amman Dep. at 356, Ex. 24.)

6.    On November 7 at 9:00 p.m., Amman gave Harvey 2 milligrams of Cogentin and 75 milligrams of Trazodone.  (Amman Dep. at 376, Ex. 26.)

7.    On November 8 at 5:00 a.m., Amman gave Harvey 2 milligrams of Cogentin.  (Amman Dep. at 375, Ex. 26.).  At 9:00 p.m., he gave Harvey 2 milligrams of Cogentin and 75 milligrams of Trazodone.  (Amman Dep. at 376, 380, Ex. 26.)

8.    On November 9 at 5:00 a.m., Amman gave Harvey 2 milligrams of Cogentin.  (Amman Dep. at 376, Ex. 26.)  At 9:00 a.m., he gave Harvey 75 milligrams of Haldol Deconate.  (Amman Dep. at 378-79.)

9.    Amman continued to administer the 2 milligrams of Cogentin to Harvey at 9:00 p.m. on November 10, 11, 12, 13, 16, 18, 19, 20, 21, 23, 24, 28, and 29, as well as at 5:00 a.m. on November 29.  (Amman Dep. at 376-77, Ex. 26.)  He also continued to administer the 75 milligrams of Trazodone at 9:00 p.m. on November 10, 11, 12, 13, 16, 18, 19, 20, 21, 23, 24, 28, and 29.  (Amman Dep. at 380, Ex. 26.)

4

10.    On December 2 and 3 at 9:00 p.m., Amman gave Harvey 2 milligrams of Cogentin, 75 milligrams of Trazodone, and 10 milligrams of Haldol.  (Amman Dep. at 381-83, Ex. 27.)

11.    On December 4 at 9:00 p.m., Amman gave Harvey 75 milligrams of Trazodone and 10 milligrams of Haldol.  (Amman Dep. at 382-83, Ex. 27.)

12.    On December 13, Defendant Amman was worried about Harvey because he was not eating, and he made the following notation in the nurses' log: "Eats almost no food.  He's definitely going downhill.  Please check him."  (Amman Dep. at 233, 320; Lovett Dep., Ex. 11.)

13.    On December 15 at 4:00 p.m., Amman took Harvey's blood pressure and vital signs and noted his pulse was slightly elevated.  (Amman Dep. at 315.)  A corrections officer informed Amman that they could not get Harvey to eat or drink, so Amman asked the officer to transfer Harvey to the sick cell so he could try "to recuperate him."  (Amman Dep. at 315, 316, 318.)  "And I said, well, bring him up to the sick cell and I'll -- he'll drink for me and he'll eat for me.  And he did."  (Amman Dep. at 316, 318.)  Amman gave Harvey two cans of Ensure and a glass of water, and provided him with a diaper after he wet the bed.  (Amman Dep. at 315, Ex. 19 at SHE000183.)  Amman noted in the Inmate Progress Notes that Harvey was "resting quietly."  (Amman Dep., Ex. 19 at SHE000183.)

5

14.    Amman checked on Harvey about three hours later, at 7:00 p.m. Amman observed that Harvey's pulse rate was still a little elevated, but stated that can be caused by not eating and dehydration. (Amman Dep. at 325, Ex. 19.) He noted in the Inmate Progress Notes, "client eats 4 tablespoons of mashed potatoes." (Amman Dep. at 322, Ex. 19 at SHE000183.) Amman testified, "The reason I wrote that, they don't keep any food for them there. But when I went to eat, they had like a buffet for us. . . . I thought maybe he'd like something different than what they'd been offering him down there. So I got a thing of mashed potatoes. I thought maybe he'll really eat this. And he did. He gobbled it all up." (Amman Dep. at 322.) Amman also gave him a carton of milk and a can of Ensure, and shared his banana with Harvey. (Amman Dep. at 323, 326-27, Ex. 19 at SHE000183.) He testified, "I felt he needed closer observation. I didn't have time to do it for him all the time, but when I had a chance, I'd kind of stand around there and talk to him. And -- because if you can brighten his mood, he's going to eat and he's going to improve." (Amman Dep. at 327.)

15.    An hour later, at 8:00 p.m., Amman checked on Harvey again. He observed that Harvey's blood pressure was good but his pulse rate was still slightly elevated. (Amman Dep. at 325, Ex. 19.) He gave Harvey another glass of water. (Amman Dep. at 328, Ex. 19 at SHE000183.)

16.     At 9:00 p.m., Amman gave Harvey 10 milligrams of Haldol, 2 milligrams of Cogentin, and 75 milligrams of Haldol Deconate.  (Amman Dep. at 384-86, Ex. 20.)

17.     On December 16, Amman observed that Harvey's pulse had gone back down.  (Amman Dep. at 331.)  Amman telephoned Dr. Tessler at 4:30 p.m. and informed him that Harvey had not been eating, and Tessler ordered a series of blood tests.  (Amman Dep. at 331, Ex. 19 at SHE000184; Lovett Dep., Ex. 11 at SHE003604; Tessler Dep., Ex. 20.)  Amman made a notation in the nurses' log for nurse Vicki Lovett to conduct those tests.  (Amman Dep. at 258-61, 329-30; Lovett Dep., Ex. 11 at SHE003604.)  At 9:00 p.m., Amman gave Harvey 10 milligrams of Haldol and 2 milligrams of Cogentin.  (Amman Dep. at 385, Ex. 20.)

18.     On December 17, 18, and 21, at 9:00 p.m., Amman gave Harvey 10 milligrams of Haldol and 2 milligrams of Cogentin.  (Amman Dep. at 385, Ex. 20.)  He noted in the Inmate Progress Notes of December 17 that Harvey was talking to him and said he felt better, and that he ate most of his evening meal.  (Amman Dep., Ex. 19 at SHE000184.)

19.     On December 25, Amman observed Harvey acting unusual, staring, and sweating, but noted that his vital signs were normal.  (Amman Dep. at 272, 277, Ex. 19 at SHE000185; Lovett Dep., Ex. 11 at SHE003623.)  He observed the muscles in Harvey's hands retracting, which was consistent with Amman's understanding of the

7

adverse effects of Haldol, so Amman gave him 2 milligrams of Cogentin at 8:20 a.m. per Dr. Tessler's verbal order. (Amman Dep. at 281-82, 290, 292-93, 303, 310, 386, Exs. 18, 19 at SHE000185, 20, 21.) About three minutes later, the retractions ceased and Harvey was fine. (Amman Dep. at 282.) The Cogentin had alleviated Harvey's symptoms. (Amman Dep. at 305.)

20.    About three hours later, at 12:00 p.m., Amman checked on Harvey to see how he was doing and "to make sure he was all right." (Amman Dep. at 291-92, Ex. 19.) He noted that Harvey was responsive and his blood pressure and pulse were normal. (Amman Dep. at 291-92, Ex. 19.) "[H]e was talking to me and doing fine. [The Cogentin] did its job. He was perfectly happy and happy with me." (Amman Dep. at 292.)

## II.    LAW AND ANALYSIS

### A.    Count One - 42 U.S.C. § 1983

Plaintiffs allege that Amman was repeatedly and deliberately indifferent to Harvey's serious medical needs. (Doc. 32, ¶¶ 65, 66.) Specifically, Plaintiffs allege that Defendant "failed to perform appropriate diagnostic testing and delayed the provision of medical treatment in violation of Larry Harvey's constitutional rights," "failed to take steps to further evaluate Mr. Harvey's severely debilitated state, to determine or evaluate the cause of his debilitation or to monitor his condition for life threatening reactions to his medication, or to provide prompt emergency medical

8

treatment after having observed [him] in a severely compromised condition." (Doc. 32, ¶¶ 66, 75.) Plaintiffs claim Amman acted in total willful and wanton disregard of Harvey's rights, and that the treatment he provided "fell so well below the applicable standard of care and was so cursory, grossly inadequate and incompetent" as to violate those rights. (Doc. 32, ¶¶ 67, 68.)

"To establish liability under § 1983 for inadequate medical treatment, a defendant must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution." *Freeman v. Lebedovych*, No. 05-15255, 2006 WL 1813900, at *1 (11th Cir. June 30, 2006). "To rise to this level, a defendant must show that his inadequate care arose from a 'deliberate indifference to [his] serious medical needs.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

Deliberate indifference has been defined by the Eleventh Circuit as medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). A showing of deliberate indifference requires a plaintiff to satisfy both an objective and subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

First, a plaintiff must demonstrate an objectively serious medical need. *Id.* The Eleventh Circuit has defined a serious medical need as "one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).

In this case, Harvey had been previously diagnosed with paranoid schizophrenia. (Cohen Dep. at 28, Exs. 2, 6, 7; McLachlan Dep. at 84-85.) Therefore, it is undisputed that Harvey's condition was objectively serious as it was diagnosed by a physician who mandated treatment. *See Carroll v. Corr. Med. Serv.*, 160 Fed. Appx. 848, 850 (11th Cir. 2005).

Once a serious medical need is shown, a plaintiff must prove that the defendant acted with deliberate indifference to that serious medical need. In other words, Plaintiffs must demonstrate that Amman: (1) had subjective knowledge of the risk of serious harm to the plaintiff; (2) disregarded that risk; and (3) by conduct that was more than mere negligence. *Farrow*, 320 F.3d at 1245; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). The Eleventh Circuit has stated, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Id.* at 1246 (quoting *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997)).

There is no evidence in this case to establish that Defendant Amman acted with deliberate indifference to Harvey's serious medical need. Though the evidence

demonstrates that Amman had subjective knowledge of a risk of serious harm to Harvey, the record does not establish that Amman disregarded such risk by failing or refusing to obtain medical treatment for him, or by delaying the provision of medical treatment. In fact, the evidence establishes quite the opposite.

Throughout Harvey's three-month incarceration, Amman provided Harvey with competent and adequate medical care. Amman administered all prescribed medications to Harvey during his shifts from September 28 to December 26, as evidenced by the contemporaneous Medication Administration Records. (Amman Dep., Exs. 20, 23, 24, 25, 26, 27.) He asked the other nurses to check on Harvey during their shifts because he was worried about Harvey not eating. (Amman Dep. at 233-37, 320; Lovett Dep., Ex. 11 at SHE003595.) He suggested mental health counseling, as evidenced by a notation he made in the nurses' log. (Amman Dep. at 230-31; Lovett Dep., Ex. 11 at SHE003593.)

Amman requested that Harvey be transferred to a sick cell so that he could recuperate him. (Amman Dep. at 315, 316, 318.) He was able to get Harvey to eat and drink after he had refused to do so on prior occasions and provided him with fluids and food, even sharing his own meals with Harvey. (Amman Dep. at 315, 316, 318, 322, 323, 326-27, 328.) He called the doctor to report Harvey's condition when he noticed Harvey was not eating and when he observed effects of the Haldol because "I saw his symptoms, and I knew I had to relive them." (Amman Dep. at

11

289-90, 331.)   Amman read about the adverse effects of Haldol after he started working with Harvey because he "wanted to look into it deeper just to have a better understanding of what's going on with him."  (Amman Dep. at 249, 251.)  Amman observed Harvey whenever he got the chance.  (Amman Dep. at 327.)

Thus, the only conclusion to be drawn from these facts is that Amman's actions do not constitute deliberate indifference. *See, e.g., Carroll*, 160 Fed. Appx. at 850 (holding defendant was not deliberately indifferent where plaintiff was examined, monitored, evaluated, and cared for regularly by physicians and nurses); *Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999) (holding psychiatrist was not deliberately indifferent where he spent time and effort working with the inmate, recommended mental health counseling, had other medical staff members monitor the inmate's behavior and symptoms).

Defendant's expert, Mark Ellsworth, RN, BSN, CCHP, concluded that the care delivered by Amman met the national standards of care for prisoners in jail and was not deliberately indifferent to Harvey's serious medical needs. (Ellsworth Rep. at 3.)

Notably, not *one* of Plaintiffs' expert witnesses concluded that Amman was deliberately indifferent to Harvey's serious medical need.  Expert witnesses Patricia Brock, RN, Dr. Michael Cooperman, Shelly Delfin, RN, Dr. Goldstein, George Herron, and Dr. Kjellgren each concluded that the nursing staff was negligent in their treatment of Harvey.  (Brock Rep. at 2; Cooperman Rep. at 7; Delfin Rep. at 1-2;

12

Goldstein Rep. at 4; Herron Rep. at 5-6; Kjellgren Rep. at 2.)    However, mere negligence or medical malpractice is insufficient to prove a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Hilton v. McHugh*, 178 Fed. Appx. 866, 871 (11th Cir. 2006); *Farrow*, 320 F.3d at 243 ("The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain.") (citation and quotation marks omitted).

**B.    Count Three – State Law Medical Malpractice**

Plaintiffs allege that Defendant Amman, in his individual capacity, breached a duty of care to Harvey by failing to adequately render him necessary medical treatment.    (Doc. 32, ¶¶ 107, 108.)    Defendant Amman is entitled to summary judgment on Plaintiffs' state law medical malpractice claim.

Section 768.28(9)(a), Florida Statutes, provides, "No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort . . . unless such officer, employee, or agent acted *in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*" (emphasis added).

Defendant submits that this standard is at least as high as the deliberate indifference standard and, therefore, liability may only attach if Amman's conduct constituted more than mere negligence.    Amman adopts the arguments made above in reference to Plaintiffs' § 1983 claim and incorporates them here in reference to

Plaintiffs' medical malpractice claim.  Accordingly, there are no genuine issues of material fact as to whether Amman breached a duty of care to Harvey.  Thus, Amman is entitled to summary judgment in his individual capacity on Plaintiffs' state law claim.

## III.   CONCLUSION

Based upon the foregoing, there are no genuine issues of material fact as to whether Amman was deliberately indifferent to Harvey's serious medical needs or breached a duty of care owed to Harvey.  Therefore, Defendant John Robert Amman is entitled to summary judgment as a matter of law on all claims against him.

**D. ANDREW DeBEVOISE, ESQUIRE**
Florida Bar No.:   0281972
**CHRISTINE H.D. MOSER, ESQUIRE**
Florida Bar No.:   0508241
**DeBEVOISE & POULTON, P.A.**
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida 32792
Telephone:   (407) 673-5000
Facsimile:   (407) 673-5059
Email: *debevoise@debevoisepoulton.com*
Email: *moser@debevoisepoulton.com*
Attorneys for Defendants Amman, Ballard,
Lovett, Otis, Risden and Warden

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of August, 2007, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the parties on the attached service list.

**D. ANDREW DeBEVOISE, ESQUIRE**
Florida Bar No.:    0281972
**CHRISTINE H.D. MOSER, ESQUIRE**
Florida Bar No.:    0508241
**DeBEVOISE & POULTON, P.A.**
Lakeview Office Park, Suite 1010
1035 S. Semoran Boulevard
Winter Park, Florida 32792
Telephone:  (407) 673-5000
Facsimile:   (407) 673-5059
Email: *debevoise@debevoisepoulton.com*
Email: *moser@debevoisepoulton.com*
Attorneys for Defendants Amman, Ballard,
Lovett, Otis, Risden and Warden

U:\02-003-Harvey v Amman et al\Pleadings\08-29-07 Def Amman's MSJ - chm

15

## <u>SERVICE LIST</u>

Joseph D. Lane, Esquire
Cochran, Cherry, Givens
& Smith P.C.
163 West Main Street
P.O. Box 927
Dothan, Alabama  36302
*Attorneys for Plaintiffs*

Harvey Jay, III, Esquire and
Trudy E. Innes, Esquire
Saalfied, Shad, Jay, & Stokes, P.A.
Post Office Box 41589
Jacksonville, Florida  32203-1589
*Attorneys for Dr. Michael Tessler*

John W. Jolly, Esquire
Jolly, Peterson & Waters, P.A.
P.O. Box 37400
Tallahassee, Florida  32315
*Attorneys for St. John's County
Sheriff's Department and Employees*

W. Douglas Moody, Jr., Esquire
Robert C. Byerts, Esquire
Myers & Fuller, P.A.
2822 Remington Green Circle
Tallahassee, Florida  32308
*Attorneys for St. John's County
Mental Health Department*

Robert A. Cole, Esquire
Cole, Stone, Stoudemire
& Morgan, P.A.
201 N. Hogan Street
Suite 200
Jacksonville, Florida  32202
*Attorneys for Dr. Stanley Cohen*